[Civil No. 676.   Filed June 2, 1899.]

[57 Pac. 641.]

## THE PROVIDENCE GOLD MINING COMPANY, Defendant and Appellant. v. DENNIS A. BURKE, Plaintiff and Appellee.

1. COMMON - LAW ACTION — WHAT CONSTITUTES — JURY — TRIAL BY — RIGHT TO—REV. STATS. U. S. SEC. 2326, ACT OF CONGRESS, MARCH 3, 1881, 21 STATS. AT LARGE, 505, REV. STATS. U. S., SEC. 1868, AND AMENDMENT, SUPP. REV. STATS. U. S. 1874-1881, P. 13, [SUPP. REV. STATS. U. S. 1891, P. 7,] CITED AND CONSTRUED—JORDAN V. DUKE, 4 ARIZ. 278, 53 PAC. 197, APPROVED.—An action on an "adverse" filed in the land office to contest the right of an applicant for United States patent, as provided for in United States statute, *supra,* is not a common-law action within the purview of section 1868, and amendment, *supra,* providing that "No party shall be deprived of a right to trial by jury in cases cognizable at common law."

2. CONSTITUTIONAL LAW — JURY — VERDICT — CONCURRENCE OF NINE JURORS—ACT NO. 51, LAWS OF ARIZONA, 1891, NOT IN CONFLICT WITH SEC. 1868, REV. STATS. U. S., AND AMENDMENT, SUPP. REV. STATS. U. S., 1874-1881, P. 13 [1891, P. 7.]—Section 1868 and amendment, *supra,* apply only to common-law actions, and therefore it is not error for the court to receive the verdict of nine jurors in an action on an "adverse," act No. 51 of the Laws of Arizona of 1891 making the concurrence of three fourths of a jury of twelve persons sufficient to render a verdict in all trials of civil cases and misdemeanors.

3. MINES AND MINING—FORFEITURE—EVIDENCE—BURDEN OF PROOF.— Forfeiture of a mining claim for failure to perform the necessary amount of work thereon, cannot be established except upon clear and convincing proof of the failure of the former owner to have the work performed, and the burden of proof is upon the party alleging the forfeiture.

4. SAME—LOCATION NOTICE—RECITALS IN—ADMISSIONS.—A location notice asserting that it is a relocation of another claim constitutes an implied admission of the validity of the first location.

5. SAME—SAME—SUFFICIENCY OF NOTICE—EVIDENCE—ADMISSIBILITY—
KINNEY v. FLEMING, ANTE, P. 263, 56 PAC. 723, APPROVED.—Where
all the monuments are upon the ground, a location notice of a
mining claim is admissible in evidence although the direction of
the closing location line is indefinitely described, the location being
sufficient in all other particulars.

6. SAME—CITIZENSHIP—PROOF OF—EVIDENCE.—The whereabouts of one
of the locators of a mining claim not being ascertainable, and his
citizenship being questioned, evidence is admissible as tending to
show his citizenship; that he had made declarations of his citizen-
ship to his friends and companions; that he had voted at elections
in Arizona; that his name appeared upon the great register of
Yavapai County; and that while a resident of Arizona he had
located many mining claims, under declarations that he was a
citizen of the United States.

7. SAME—SAME—JOINT LOCATORS—CITIZENSHIP OF ONE SUFFICIENT TO
GIVE TITLE, WHERE BOTH CONVEY.—Where joint locators of a mining
claim transfer the same by deed, the non-citizenship of one
would not make the location invalid, and the grantee would
obtain a perfect title to a valid mining location unaffected by such
non-citizenship.

APPEAL from a judgment of the District Court of the
Fourth Judicial District in and for the County of Yavapai.
R. E. Sloan, Judge.  Affirmed.

Statement of facts:—

The appellant, the Providence Gold Mining Company, claim-
ing to be the owner of mining locations situated in Yavapai
County, called the "Hillside," "Yum-Yum," and the "Fran-
cis," made application for United States patent therefor in
the land office in Prescott.  The appellee, Dennis A. Burke,
filed his contest in the land office on May 8, 1897, and within
thirty days thereafter commenced proceedings in the district
court of Yavapai County to determine the question of right
of possession, in accordance with the provisions of section
2326 of the Revised Statutes of the United States.  The three
mining locations claimed by appellant adjoin each other, and
run in a general easterly and westerly direction.  The Hillside
lies in the middle, the Yum-Yum joins it on the westerly end
with a strong deflection to the southwest, and the Francis
joins the Hillside on the easterly end with a strong deflection
to the northeast.  Appellee made allegation in his complaint
that he was the owner of the Wizard mining claim.  By a

map filed as an exhibit with the complaint, he showed and alleged that the surface boundaries of the Wizard location were substantially those of the Hillside location, and that there was a conflict between the Wizard claim and the claims for which appellant was seeking patents to the extent of 2.876 acres on the Yum-Yum, 15.030 acres on the Hillside, and .304 acres on the Francis. The Wizard claim was located May 24, 1893, by A. L. Butler and Joseph McKeague, and came into possession of appellee by mesne conveyances. The Yum-Yum claim was located July 6, 1893, by A. E. Baker and A. B. Lewis. The Hillside was located January 1, 1896, by A. B. Lewis and Henry Johnson. The Francis claim was located January 1, 1896, by S. E. Mensinger. The three claims, Yum-Yum, Hillside, and Francis, came into possession of appellant by mesne conveyances. The Hillside claim, whose lines are substantially those of the Wizard claim, is a re-location of the Wizard claim, and is described in the location notice as ''formerly the Wizard mining claim, as a forfeited claim.'' The answer of appellant, after making allegations of the locations of the several claims, further alleges, and urges as a defense, that the annual expenditure for the year 1895 was not made upon the Wizard claim, and that the same was forfeited. The cause was tried before a jury, who returned a verdict in favor of plaintiff, Burke, the appellee herein. Judgment was rendered accordingly. The defendant appealed to this court, and assigned the following errors: Nos. 1, 2, and 3 relate to instructions to the jury. No. 4. That the court erred in permitting the introduction of the location notice of the Wizard claim to be read in evidence. No. 5. That the court erred in admitting the testimony as to the acts of location as to the Wizard claim. No. 6. That the court erred in admitting the deed from Joe McKeague, one of the locators, in evidence. No. 7. That the court erred in permitting any evidence to go to the jury as to Joe McKeague's having voted at Big Bug in 1894, to prove citizenship. No. 8. That the court erred in overruling appellant's motion for an order and decree in favor of defendant notwithstanding the findings and verdict of nine of the jurors. No. 9. That the court erred in overruling appellant's motion in arrest of judgment. No. 10. That the court erred in overruling appellant's motion for new trial.

No. 11. That the court erred in instructing the jury that under the law in this class of cases it is not required that a unanimous verdict be returned by the jury.

The following is a plat of the premises in question:—

Andrews & Ling, and H. D. Stocker, for Appellant.

The court erred in permitting any testimony to go to the jury as to Joe McKeague having voted at Big Bug in 1894. An attempt to prove a man's citizenship by simply voting at one election is incompetent in any case, and particularly so in actions of this kind. Citizenship of the locator of a mining claim is governed by section 2321 of the Revised Statutes of the United States. The only evidence which is admissible as to the citizenship of the locators of the Wizard

claim would be either depositions of the party himself, affidavits, or other testimony of the party himself.

Morrison & Morrison, for Appellee.

The party setting up forfeiture must prove it by a preponderance of evidence. *Hammer* v. *Garfield M. and M. Co.*, 130 U. S. 291, 9 Sup. Ct. 548.

Where a mining claim is a practical relocation of a former location and the notice of location refers to the former location as a forfeited claim, this is an implied admission on the part of the person claiming under the relocation of the validity of the former location. *Willis* v. *Blaine,* 4 N. Mex. 378, 20 Pac. 798; *Belk* v. *Meagher,* 104 U. S. 279; Lindley on Mines, par. 404.

That voting is an evidence of citizenship is sustained in *Boyd* v. *Thayer,* 143 U. S. 180, 12 Sup. Ct. 375. Citizenship may be proved like any other fact. Lindley on Mines, par. 227; *Thompson* v. *Spray,* 72 Cal. 528, 14 Pac. 182.

STREET, C. J. (after stating the facts).—The last four assignments of error, numbered 8, 9, 10, and 11, may be grouped together. Counsel for appellant have made an exhaustive · argument upon them, and have placed the errors there assigned in a prominent attitude. Grouped together, they relate to the rights of the parties to a trial by a common-law jury. The cause was tried before a panel of twelve. The court instructed them that: "Under the law in this class of cases, it is not required that a unanimous verdict be returned by the jury. If, therefore, you do not unanimously agree upon a verdict, but three fourths of you, or more, do agree upon a verdict, such verdict will be signed by your number constituting said three fourths, or more, and returned into court,"—upon which instruction a verdict was returned, signed by but nine of the jurors. Act No. 51 of the Session Laws of Arizona of 1891 provides as follows (section 1): "That in all trials of civil cases and in all trials of misdemeanors in the courts of this territory, where a jury of twelve persons shall be impaneled to try such case, the concurrence of three fourths (¾) of such jury shall be sufficient to render a verdict therein. And in all such trials, when the said jury of twelve persons shall unanimously agree upon a verdict, said

verdict shall be signed by the foreman thereof, and returned into court; but where such jury do not unanimously agree upon a verdict, then said three fourths of such jury shall sign the verdict so agreed upon by them, and notify the court of such fact, and thereupon all of said jury shall be returned into court, and shall then deliver to the court the verdict so signed by three fourths (¾) of such jury; and the court shall receive and cause to be read and recorded such verdict in the cause, and judgment shall be entered thereon as in other cases now provided by law. Provided, that in all trials of felony, the concurrence of twelve jurors shall be necessary to render a verdict." The act has already received a construction by this court in the case of *Carroll* v. *Byers,* 4 Ariz. 158, 36 Pac. 499, where it was held that the act, "in so far as it applies to cases cognizable at common law, must be held invalid, because in conflict with section 1868 of the Revised Statutes of the United States, which authorizes in the territories a commingling of common-law and chancery jurisdictions in the territorial courts, and a uniform course of proceding in all cases, legal or equitable"; and provides also (Supp. Rev. Stats. U. S. 1874-1881, p. 13; 1891, p. 7), "No party shall be deprived of a right to trial by jury in cases cognizable at common law." Similar statutes have been upheld in other territorial jurisdictions when not in conflict with section 1868 of the Revised Statutes of the United States and its amendments. In the case of *Hess* v. *White,* 9 Utah, 61, 33 Pac. 243, the supreme court of Utah held that a statute providing that in all civil actions a verdict may be rendered by a concurrence therein by nine or more members of the jury was not in conflict with the constitution of the United States, "that in suits in common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved" (Amend. art. 7); nor in conflict with section 1868 of the Revised Statutes of the United States and its amendments, that "no party shall be deprived of the right to trial by jury in cases cognizable at common law." The supreme court of the United States, in the case of *Publishing Co.* v. *Fisher,* 166 U. S. 464, 17 Sup. Ct. 618, in discussing the validity of the Utah statute, only held that it was in conflict with the provisions of the constitution and statute heretofore cited in cases arising at common law; that the provision of

the constitution and the acts of Congress secured to litigants in common-law actions the right to trial by jury in all its substantial elements. The same court, in the case of *Walker* v. *Railroad Co.*, 165 U. S. 593, 17 Sup. Ct. 421, in construing a territorial statute providing for special issues to be found by a jury, held that it was within the power of a legislature of a territory to provide that on a trial of even a common-law action the court may, in addition to the general verdict, require specific answers to inquiries; and when a conflict is found between the two, render such a judgment as the answers to the special questions compel.

The question, then, as to whether the court committed an error in instructing the jury that a verdict could be rendered by three fourths of their number, and by afterwards receiving a verdict signed by but nine of their number, can be settled by determining whether this particular action is a common-law action. This action is on an "adverse" filed in the land office to contest the right of an applicant for United States patent. In *Doe* v. *Mining Co.*, 43 Fed. 219, the question was raised by demurrer as to whether an "adverse" was a law action or a suit in equity. The demurrer raised the point that the suit should be dismissed for the reason that the complaint showed upon its face that the plaintiff had a full, adequate, and complete remedy at law by the ordinary action in ejectment. The court, after discussing the common-law actions for the recovery of land, decided that in the proceeding contemplated by the statute no such judgment could be rendered as was rendered in common-law actions; that the proceeding there provided for has not for its object the recovery of possession of the mining ground, nor is possession made by the statute the test of either party's right; that the action could be maintained whether either in or out of possession. "The sole object of the proceeding in court is the determination of the contest that arose in the land office, the point of which is, Which of the applicants, if either, is entitled to receive the patent from the government? The right of possession referred to in the statute is not the right which flows from and is a part of the title of ownership of private land. It has no relation to such right, but it is the right which flows from a compliance with the laws prescribed by Congress for the acquisition of a government patent for mineral lands.

Such a right never was, and never could be, the subject of any common-law action; and its determination, therefore, on the equity side of the court, cannot be, as argued for the defendant, a violation of that provision of the constitution which declares that the right of trial by jury shall be secured to all, and remains inviolate forever." In the case of *Rutter* v. *Mining Co.*, 75 Fed. 37, the two questions discussed were (1) whether such suits arise under laws of the United States, and (2) whether they are at law or in equity; and, after discussing the first question, the court proceeds: "The remaining question, as one of practice, is important, and seems never to have been directly considered by the supreme court, but has been by a few other courts, whose decisions have been contrary. The statute [Rev. Stats. U. S., sec. 2326] directs that when a party enters, in a local land office, his adverse claim to an application for patent to mining ground, he shall commence his proceedings in some court of competent jurisdiction to determine the question of 'the right of possession' to the ground in dispute, and, according to the judgment of such court, the rights of the parties are finally determined in the land office. By the act of March 3, 1881, this section is so amended that, if neither party shows title to the ground in controversy, neither will have judgment in his favor. So far as the court is concerned, it is a special proceeding, referred to its determination for the guidance of the land office, and the jurisdiction of the court in such cases is based upon prior proceedings in such office. The questions of title and patent for agricultural and other lands—similar matters—are determined by the local land office. The questions for consideration are such as may, if Congress had so directed, be adjudicated without the aid of a jury. There is nothing in the nature of the questions involved that entitles any of the parties to a trial by jury within the intent of the seventh constitutional amendment, for the whole proceeding, and every part thereof, is nothing more than a procedure established by the government for the disposal of its lands; and certainly it cannot be claimed that the purchaser can demand a trial by jury to determine his claim to government lands. In all such contests it must be remembered that the government is an interested party so far as to see that the claimants have complied with the mining requirements before they get any

title to the lands. The statutes and some decisions say that this action is to determine 'the right of possession' to the ground in controversy. If this were all, it might be determined by ejectment; but it is submitted that this is not 'all, and that the use of this expression in the statute is an inadvertence or an inaccuracy, for the entire import and object of the statute is to have determined the more important question as to who, if any one, is entitled to the patent. Frequently a party has a right to the possession, and not to the patent. He is entitled to the possession as soon as he duly locates a claim, but not to a patent until he shall have done the necessary work.' This action, then, is to find who is entitled to the conveyance from the government—from the trustee—for the land in controversy. Actions for conveyance of realty are essentially equitable. Again, whatever claim either party may have to the ground in controversy is based upon an equitable title alone, while the legal title remains in the government. Common-law actions deal with legal, and not equitable, titles.'' It was provided by section 2326 of the Revised Statutes of the United States that the action was to be brought ''to determine the question of the right of possession.'' The act of Congress of March 3, 1881 (21 Stats. 505), was an amendment thereto, ''that if, in any action brought pursuant to section 2326 of the Revised Statutes, title to the ground in controversy shall not be established by either party, the jury shall so find, and judgment shall be entered according to the verdict.'' ''In such cases costs shall not be allowed to either party, and the claimant shall not proceed in the land office or be entitled to the patent for the ground in controversy until he shall have perfected his title.'' The supreme court of the United States, in the case of *Perego* v. *Dodge,* 163 U. S. 160, 16 Sup. Ct. 971, construed those provisions, and held that the act of March 3, 1881, was not intended to require, and does not require, all suits under section 2326 to be actions at law and to be tried by a jury. They decided that the determination of the right of possession as between parties is pursuant to statute and in aid of the land office, and that the form of action was not provided for by the statute, and that either an action at law or suit in equity would lie, as either might be permitted under the particular circumstances. This court heretofore, in the case of *Jordan* v. *Duke, ante,* p. 55, 53 Pac.

197, in effect decided, that where both plaintiff and defendant to the action set forth fully the nature of their claims and asked for relief such action was in aid of the proceedings in the land office; and that a verdict could be rendered either for the plaintiff or defendant or for the government. We did not then go so far, nor do we now go so far, as to say that the government would have been concluded by a verdict in favor of either the plaintiff or defendant. The effect of a verdict in favor of the government would prevent either party from proceeding further in the land office in obtaining patent. In this action the parties in their pleadings set out at length their respective mining locations, and each asked for a judgment which, when filed in the land office as provided by the statute, would have permitted them to have proceeded in the land office without molestation of the other. No execution would issue for the possession of the land, and no other effect would have been given to the judgment than to have cleared away the obstructions which had been placed against the application for patent in the land office—purely a statutory remedy and statutory relief. That being the case, it was not a common-law action. The parties were not entitled, as a matter of constitutional right, to a verdict by a common-law jury. The jury, at best, was an advisory agent of the court, to enlighten its conscience, and not to control its judgment. Under the provisions of act No. 51 of the Laws of Arizona of 1891, the court did not commit an error in receiving the verdict of the jury signed by but nine of its members.

2. The first assignment of error is upon the following instruction: "And you are further instructed that the burden of proof is upon the defendant to show that the said O'Donnell failed to do the amount of $100 worth of work upon what is known as the 'Wizard Claim' in the year 1895." Under the issue this was not an erroneous instruction. The answer admitted the former location of plaintiff's Wizard claim. Defendant made his locations upon the same ground upon the apprehension and theory that plaintiff's Wizard claim had been forfeited, and made such allegation in his answer. In the case of *Hammer* v. *Mining Co.*, 130 U. S. 291-301, 9 Sup. Ct. 552, where the same question was decided, it was said: "As to the alleged forfeiture set up by defendant, it is sufficient to say that the burden of proving it rests upon him;

that the only pretense of a forfeiture was that sufficient work, as required by law each year, was not done on the claim in 1882, and that the evidence adduced by him on that point was very meager and unsatisfactory, and was completely overborne by the evidence of plaintiff [citing the case of *Belk* v. *Meagher,* 104 U. S. 279]. A forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have work performed, or improvements made, to the amount required by law."

3. Assignments of error numbered 2 and 3 relate to instructions of the court to the effect that the location notice of the Hillside mining claim, containing, as it does, the assertion that the Hillside location is a relocation of the Wizard mining claim, makes an implied admission on the part of the defendant and its grantors of the validity of the location of the Wizard. In the case of *Wills* v. *Blain,* 4 N. Mex. 378, 20 Pac. 798, the supreme court of New Mexico, in regard to a similar instruction, held that the same was good. They say: "The relocator, when he so describes himself in the notice, solemnly admits, in an instrument which is made a matter of record, that he is not a discoverer of mineral, but an appropriator thereof, on the ground that the original discoverer has forfeited his right. The notice becomes in some sense an instrument of title —a record. It is the equivalent of an admission of record of an original locator that the locator claims a forfeiture by reason of the failure on the part of the first locator to make his annual expenditure. This we believe to be the doctrine of *Belk* v. *Meagher,* 104 U. S. 279, and on that authority sustained the instruction of the court below on that point." We need not take space in this opinion to insert the instructions given in this case and the instructions given in the case of *Wills* v. *Blain,* to compare them, but it will be sufficient for us to say that both use such language as, in effect, says that such a recital in the location notice of the relocated claim impliedly admits the validity of the prior location.

4. The fourth assignment of error is that the court erred in permitting the introduction of the location notice of the Wizard claim to be read in evidence, and specifies as the reasons,—1. That the citizenship of the locators had not been shown; and 2. That the location was vague and indefinite. The reason why the location notice was claimed as vague and

indefinite was because of the description of its exterior boundaries. The only point about which there is anything indefinite is in the direction of the closing location line. If the monument in the center of the claim is the point of beginning, the closing line would be a diagonal one from the southeast corner to the center of the claim. It was the evident intention of the locator to describe his closing line to meet the center side-line monument on the easterly side, which was described as three hundred feet from the point of commencing. In all other particulars the location is sufficient. The proof showed that all of the monuments were upon the ground. In the case of *Kinney* v. *Fleming,* decided by this court at the present term, and reported herein, *ante,* p. 263, 56 Pac. 723, a similar question arose as to the description of the monuments. We there said: "It is true, the position of the monuments as built upon the ground was described in such a way as to direction as to be confusing; but, if the statutory requirements were complied with, the notice would be sufficiently correct to allow its admission as evidence when offered by the defendant."

5. The fifth assignment of error is that the court erred in admitting testimony as to the acts of location of the Wizard claim, and appellant argues the assignment of error upon the ground that the complaint did not state such facts in regard to the location as would warrant any evidence of the location notice. Without making a reference to the allegations in the complaint, we think it will be sufficient for us to say that appellant's contention in that particular cannot be sustained.

6. The remaining assignments of error, numbered 6 and 7, relate to the proof of citizenship of McKeague, one of the locators of the Wizard. At the trial, McKeague was absent. Plaintiff showed that he had used every effort to find his whereabouts, and to have him present at the trial, but McKeague was unable to be found, which fact compelled the plaintiff to resort to proof of McKeague's citizenship from other sources. Evidence was adduced to show he had made declarations of his citizenship to his friends and companions; that he had voted at the elections held in the territory of Arizona, and that his name had appeared upon the great register of Yavapai County; and that while he was a resident of Big Bug Mining District, in Yavapai County, Arizona, he

had performed many acts of locating mining claims, through a long number of years, under the declaration that he was a citizen of the United States. That such evidence is legitimate, and tends to show citizenship, is sustained in the case of *Boyd* v. *Nebraska*, 143 U. S. 180, 12 Sup. Ct. 375. Anyway, plaintiff held and owned the Wizard mining claim by mesne conveyances from the joint locators, Butler and McKeague. It was strictly proven that Butler was a citizen, and, Butler being a citizen of the United States, the fact that McKeague was not a citizen of the United States could not operate to defeat the rights of Butler, or to throw the whole claim open to relocation. McKeague's situation at the most would have been one of simple incapacity to hold, without the effect of making the location invalid, if the co-locator, Butler, was a citizen at the time the location was made. Butler and McKeague having joined in a conveyance, their deed transferred to the grantee a valid mining location, unaffected by the non-citizenship of one of the locators. The judgment of the district court is affirmed.

Davis, J., and Doan, J., concur.