## JACKSON *et al.* v. PRIOR HILL MIN. CO.

1. Findings of a trial court on disputed questions of fact will be presumed correct on appeal unless there is a clear preponderance of the evidence against them.

2. Where plaintiffs claimed certain mining claims under an alleged relocation of defendant's claims, they thereby admitted the validity of defendant's former location, and were estopped to deny the validity of the original location.

3. Reversible error cannot be predicated on the rejection of offers to prove facts which were established by other uncontradicted evidence.

(Opinion filed July 6, 1905.)

Appeal from circuit court, Lawrence county; Hon. W. G. RICE, Judge.

Action by Frank R. Jackson and another against the Prior Hill Mining Company. From a judgment in favor of defendant, plaintiffs appeal. Affirmed.

*Martin & Mason,* for appellants.

*McLaughlin & McLaughlin,* for respondent.

HANEY, J.   This is a controversy concerning mining ground; the plaintiffs basing their rights upon the White Horse and Black Horse lode claims, which were located January 5, 1898; the defendant asserting prior and superior rights by virtue of the Snowy Day and Black Lode claims, alleged to have been located May 6, 1896.

The court, before whom the cause was tried without a jury, found:   (1) That on May 6, 1896, the Snowy Day and the Black lodes were duly located by the grantor of the defendant herein, David R. Short; setting forth in detail the acts of location

including the following: "That the said David R. Short at the time of said location posted his location certificates at the point of discovery of the lode on each of said claims upon an old discovery stake which was standing upon each of said claims, and placed thereon a written location certificate, stating the name of the lode, name of the locator, date of location, the number of feet in length claimed on each side of the discovery, the number of feet in width on each side of the vein or lode, the general course of the lode, and giving such description in said location certificate as served to identify each claim with reasonable certainty, and also recited in said location certificate of each claim that it was a relocation of a claim (naming it) by reason of a failure to do the annual assessment work for the year 1895." (2) That on or about January 5, 1898, the grantor of the plaintiff duly located the White Horse and Black Horse lodes, reciting the acts of location in detail. (3) That the said White Horse and Black Horse lodes conflict with the said Snowy Day and Black lodes—and concludes that on the 6th day of May, 1896, and ever since said day, the said David R. Short and his grantee, the defendant herein, was the owner in possession of and entitled to the possession of the ground described in the complaint in this action (the location of said Snowy Day and the Black lodes having been prior in time to the location of said White Horse and Black Horse lodes) and that the plaintiffs have no estate or right in or to the ground so in conflict between said lodes.

It is contended that the defendants' claims were not legally located, for two reasons: "(1) The location notices posted thereon did not contain the statutory requirements, in that they did not give (a) the date of discovery, (b) the number of

feet claimed in length on either side of the discovery, or (c) the number of feet in width claimed on each side of the lode; and (2) the locator did not erect a new location stake. The lower court found against appellants' contention as to the contents of the notices. The findings of a trial court or referee on disputed questions of fact are always presumptively right, and though, under our statute, not as controlling upon this court as the verdict of a jury, they must stand, unless there is a clear preponderance of the evidence against them. Randall v. Burke Tp., 4 S. D. 337, 57 N. W. 4; Williams v. Williams, 6 S. D. 284, 61 N. W. 38; Webster v. White, 8 S. D. 479, 66 N. W. 1145; Hulst v. Association, 9 S. D. 144, 68 N. W. 200; McKenna v. Whittaker, 9 S. D. 442, 69 N. W. 587; Reagan v. McKibben, 11 S. D. 270, 76 N. W. 943; Christ v. Bank, 13 S. D. 23, 82 N. W. 89; Charles Betcher Co. v. Cleveland, 13 S. D. 347, 83 N. W. 366; Larson v. Dutiel, 14 S. D. 476, 85 N. W. 1006; Sands v. Cruickshank, 15 S. D. 142, 87 N. W. 589; McGray v. Elevator Co., 16 S. D. 109, 91 N. W. 457. Touching the contents of the location notices the evidence was conflicting. Several witnesses on behalf of the plaintiffs testified that they saw them soon after they were posted, and that there were no distances given in any of them. On the other hand, Giles M. Fish, a witness on behalf of the defendant, testified: "I think it was between the 1st and 10th of May, 1896, I went out with Mr. Short in the morning and posted four location notices. I remember the name of one, which was the Prior Hill lode. It was a relocation. The ground was about two miles west from Elk Mountain. I helped put up the location notices on a board. They were regular location notices put on a board nailed up on a post. That location notice was in the ordinary form of loca-

tion certificates in this country, as near as I know. I never helped Mr. Short make any other locations than these." David Short testified: "The notices that Mr. Fish and I took up with us were fixed in my cabin. Put them on a board. I put tacks all around them, and they stayed there until the next year. I see them all there a year afterwards, exactly as they were put up. That would be in May, 1897. They were written by John Baker on paper—on blank location certificates. All I had to do was to fill in the date and nail them on a board. Nailed them at the old discovery stakes—at the discoveries that were made in 1886. I am sure each one of them stated how far the claim ran in each direction. All were written alike. All stated how many teet the claims ran in each direction, and took in the same ground we had in 1886." John Baker testified: "In 1896 I prepared some location notices for Mr. Short. The only way I could have of fixing the time is by dates that I see in these location certificates. He was in here prior to that time, and these papers were made out. That is the four that were put up were made prior to that time. My recollection of it now is that I left the date blank in the papers that I prepared. When I prepared these notices for Short to post on the ground in 1896, my recollection is they were all filled out but the dates. I had drawn a great many location notices and certificates. Had been register of deeds of this county for eight years. Have been drawing notices and certificates for myself and for companies in which I was interested." Henry Suhr testified: "I was out at Mr. Short's while Mr. Giles Fish was there in May, 1896. I recollect Mr. Short, Mr. Fish, and myself fixed up some location notices for the Prior Hill ground. We had the notices made out before. I believe

Mr. Baker made them out.  *  *  *  I read all the notices. The blanks were all filled out in the notices.  The notices contained the lengths of the lodes from the discoveries each way, running due north and south.  They contained the width of the lode.  I believe it was located by Short; I believe, in the name of the Prior Hill company."  As Short and Baker were familiar with the regulations relating to mining claims, and the notices were in the usual form, it is reasonable to suppose that they were properly prepared.  It is not probable that experienced miners would post such notices as plaintiffs' witnesses claimed they saw.  Defendant's testimony can be ignored only on the theory that its witnesses were mistaken or swore falsely.  It is hardly reasonable to assume that they were all mistaken.  Whether they were worthy of belief was a question peculiarly within the province of the trial court.  Its findings of fact must be sustained.

The contention that the relocations relied upon by the defendant were invalid because the notices were posted upon old location stakes need not be considered, for the reason that the location certificates of the plaintiffs' claims recited that they were relocations of the defendant's claims, respectively.  Relocation is the appropriation of mining ground by location where a former claim has become lost by abandonment or forfeiture, and the land is consequently restored to the public domain.  There can be no relocation unless there has been a prior valid location, or something equivalent, of the same property.  Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735.  A relocation is an implied admission of the validity of the former location, and the assertion that the relocator claims a forfeiture by reason of a failure on the part of the former locator to com-

ply with the law.   Such being the case, the only inquiry is as to whether the former locator performed the requisite labor. Lindley on Mines, § 404; Wills v. Blain (N. M.), 20 Pac. 798; Providence Gold Min. Co. v. Burke (Ariz.), 57 Pac. 641; Belk v. Meagher, supra.   The plaintiffs should not be heard to deny the existence of a fact essential to the validity of their own claims.   They stand in an attitude different from that of an original locator.   In the language of Long, C. J., (Wills v. Blain, supra): ''The relocator, when he so describes himself in the notice, solemnly admits, in an instrument which is made a matter of record, that he is not a discoverer of mineral, but an appropriator thereof, on the ground that the original discoverer had perfected his right.   The notice becomes in some sense an instrument of title—a record.   It is the equivalent of an admission of record to the original locator that the relocator claims a forfeiture by reason of a failure on the part of the first locator to make his annual expenditure."

The plaintiffs offered certain location certificates for the purpose of showing that the ground in controversy had been several times located or relocated for the benefit of the defendant company.   Reversible error cannot be predicated upon the rejection of such offers because the facts sought to be proven thereby were established by other uncontradicted evidence. David Short, the principal witness on behalf of the defendant, testified as follows: ''I had these claims relocated again in January, 1888, by Henry Suhr.   Then on November 27, 1889, I had all these four claims relocated again under the same names as before by John H. Manning.   He conveyed to the Prior Hill Company right thereafter.   These claims have been relocated three times for the company, and any further I do not

know.   Manning has located them once, and Henry Suhr and myself.   I remember that.   Anything further, you will have to look at the records."

The judgment of the circuit court is affirmed.