## NEELEY v. ROBERTS.

Error in admission of an opinion over objections to the question is not ground for reversal; the fact sought to be established by it being proved by other uncontradicted evidence, to which such objections did not exist, and concerning which no error is assigned.

A finding that a flock of sheep of a certain number, as increased by lambs in two successive springs, was of a certain greater number, held, not against the clear preponderance of evidence.

(Opinion filed, Sept. 4, 1909.)

Appeal from Circuit Court, Hughes County. Hon. LORING T. GAFFY, Judge.

Action by Thomas Neeley against David E. Roberts. Judgment for defendant. Plaintiff appeals. Affirmed.

See, also, 17 S. D. 161, 95 N. W. 921.

John A. Holmes, for appellant. U. S. G. Cherry, for respondent.

HANEY, P. J. The parties to this litigation entered into a written contract, whereby it was agreed that the plaintiff should keep and care for a flock of sheep belonging to the defendant for five years, and then receive one-half of the flock for his services. At the end of the contract period the sheep and their increase having been kept and cared for by the plaintiff, a controversy arose concerning the division of the flock and numerous items of account. No settlement was effected. All the sheep then living and not sold remained with the plaintiff. About one month later this action was commenced. It was referred to a referee, who tried the cause and filed his report; his decision being favorable to the plaintiff. The circuit court erroneously set aside the decision of the referee and ordered a new trial, which was had before the court without a jury, on December 8, 1900, resulting in a judgment from which the

plaintiff appealed to this court. Such judgment was reversed, and the cause remanded, with directions to accept the referee's report, and to enter a judgment thereon consistent with the facts found therein, the changes in the condition of the property, and situation of the parties subsequent to the trial before the referee, and the views expressed by this court. Neeley v. Roberts, 17 S. D. 161, 95 N. W. 921. In the meantime the sheep were sold by the plaintiff, and $2,740, as proceeds of such sale, passed into the possession of a receiver. Subsequently the cause was again heard purusant to the mandate of this court, when the court found that the number of sheep, which was 857 at a time of the trial before the referee, together with the increase thereof, continued in plaintiff's possession until the 26th day of August, 1899; that between January 6, 1898, and August 26, 1899, the plaintiff sold 100 fat wethers belonging to the flock, receiving $300, no part of which was accounted for by him to the defendant; that, agreeably to the report of the referee, plaintiff was entitled to $801.08 for caring for the flock from and after the expiration of the contract period, to be deducted from the value of the sheep sold or disposed of by the plaintiff; that the flock found by the referee to consist of 857 sheep at the time of trial before him, October 12, 1897, was increased in the spring of 1898 by a crop of lambs, and again increased in the spring of 1899 by another crop of lambs, and consisted on August 26, 1899, of 1,457 sheep; that the value of the flock on the last-mentioned date was $4,479, which was the value of the entire flock, including the above mentioned fat wethers previously sold; that on August 26, 1899, the plaintiff, in violation of a restraining order previously issued by the court, sold and disposed of the flock for the sum of $2,806.50; that out of this sum the plaintiff deposited with P. F. McClure, receiver of the property in controversy, $2,740, and from these facts the court made the following conclusions of law: "The plaintiff is entitled to recover herein upon the accounting between the plaintiff and the defenant the sum of $801.08 for herding, caring, and keeping said flock of sheep from the 26th day of November, 1896, to the date of the trial before the said referee. (2) The plaintiff should be charged upon the accounting between the plaintiff and the defendant the full value of said flock of sheep

on the 26th day of August, 1899, the date upon which he sold and disposed of the same, including the said 100 fat wethers sold and disposed of by himself as aforesaid, amounting in the aggregate to the sum of $4,779, and leaving the total amount to be charged to the plaintiff after deducting the said $801.08 the sum of $3,-977.92.    (3) Of said sum of $3,977.92 the plaintiff is entitled to be credited with one-half, being the sum of $1,988.96, and the defendant is entitled to be credited with one-half, being the sum of $1,988.96.    (4) The defendant is entitled to the judgment of this court directing that the said reciver pay to him or to his attorney, U. S. G. Cherry, out of the said sum of $2,740, now in the hands of the said receiver, the said sum of $1,988.96.    (5) The plaintiff is entitled to the judgment of this court that there be paid to him or to his attorney, John A. Holmes, out of the hands of the receiver, the entire balance remaining after the poyment to the de-defendant of the said sum of $1,988.96."

Upon the last hearing, October 3, 1903, it was stipulated that, for the purpose of determining what judgment should be entered in pursuance of the mandate of this court, the evidence produced by the respective parties at the trial before the court on December 8, 1900, should be deemed and considered as the record upon which the cause should then be heard, and that the wool clip for the years 1898 and 1899, received by the plaintiff should pay for the keeping of sheep during those years. The evidence thus introduced appears in the abstract on the present appeal. On direct examination plaintiff testified: "That flock of sheep consisted on or about the 26th day of August, 1899, of, I think it was 1,020, I am not positive; between 1,010 and 1,020. When we got the number after we counted them out, there were so many lambs and so many old ones. I do not remember now how many lambs there were. I have forgotten the number of old ones, but the lambs and sheep were about 1,020. On the 26th day of August, 1899, I delivered the sheep here. I sold them. There were 8 to 10 culls that were kept out. There were 10 culls, I think. I had Mr. McClure make out the bill of sale of the 1,020 to these parties, the number of lambs and the number of old ewes, but I didn't keep the record of it. He just took the record and made up the bill of sale. I

don't know as we have got it down. I think he kept a memorandum of it—of the number of lambs and the number of old sheep. I didn't keep a record of it only just on a slip of paper as we counted them out. I have not that slip of paper now. I do not know where it is. I am pretty positive that the exact number of sheep that I sold to these Iowa parties, and for which Mr. McClure made out a bill of sale, was 1,020 lambs, and all, but I do not remember how many of them was sheep and how many lambs." On cross-examination he testified as follows: "I did not keep any record of the number of lambs that came during the spring of 1899 during the lambing season. I did not keep any account of how many came because some of them came early and they died. About the only way we kept count was of the ones we sold. The number of those I don't know. We docked the lambs in the spring after the lambing season of 1899. We always counted the lambs at the time of docking. I don't remember how many there were. I haven't an account of it. I didn't preserve an account of the number of the increase of the flock during the season of 1899. Have nothing that I can refer to to ascertain what was the increase of that flock during that season. Didn't keep any record of the number of the increase. I do not remember whether we counted the lambs in the spring or during the lambing season of 1898. I presume we counted them. Made no record of that count. I am not able to tell how many lambs came during the lambing season of 1898 and lived. I have no record of any kind, nor any recollection, nor any means of informing the court as to how many lambs were added or sheep were added to the flock by reason of increase during the season of 1898, or the season of 1899. And the same is true of the season of 1897."

Newell, a witness on behalf of the defendant, testified as follows: "I have lived here nine years. Have been engaged in the sheep business five years last July. I have seen several times the flock of sheep involved in this suit. Last saw them along during the summer of 1899. I was down at the yards the day that they were shipped out. I did not notice them particularly. I noticed them enough to notice the condition they were in. They were in good condition. They were range sheep. They would grade as a

medium flock, medium grade.  At the time I saw them last they appeared to be in good growing condition. * * * Have known the flock of sheep for some five years back. * * * My experience has been such that I am able to state what is the usual and fair per cent- age of increase of a properly handled flock of sheep of that char- acter.  The usual and fair increase of sheep per annum since Feb- ruary 2, 1897, of a flock of this character would be 75 per cent. on the breeding of ewes.  That is 75 per cent. for each year.  I am taking into consideration in that estimate the decrease in the flock and one thing and another, the usual per centage.  I am estimat- ing this flock from my knowledge of it.  I should say it would be 75 per cent. increase.  I saw the flock in the summer of 1898. They were out on Mr. Neeley's range.  Saw them several times during the summer of 1898.  From my observation of them the number of lambs in that flock at that time would bear out my es- timate of the per centage of increase.  In 1899 I saw them, and they seemed to be in fair growing condition, a prosperous bunch of sheep.  I should judge the increase would be about the same From my observation of the percentage of increase the percentage of lambs seemed to be about 75 per cent. of the original flock."

Dotson, another witness on behalf of defendant, testified as follows: "I was acquainted with this band of sheep.  Saw them several times, several times prior to the last trial before the referee, and several times subsequent to that.  I saw them a month or six weeks after the trial in 1897.  The flock was then in very good condition.  Have been in the sheep business for a good many years. Have handled sheep for 15 or 20 years back, not extensively all the time though.  Handled them exclusively since 1894.  This flock of sheep, I would judge, would grade medium and low medium. I would grade them as medium.  You have to judge the condition of the wool.  I would grade these as good medium sheep.  The condition of the band when I first saw them after the last trial was very good.  They were what you would call a mixed band.  I could not say positive, but I shouldn't judge that there were any great amount of old sheep among them.  About the same amount that would likely be in a mixed band.  I saw them again after that. Then I saw them another time.  I think I saw them three times

after the former trial. I never saw them afterwards up close enough to pass an opinion. I looked them over after the last trial with the view to purchase them. That was directly after the trial. I examined them pretty closely. At one time I looked them over pretty thoroughly. During all these times they were in very good condition. From my experience in handling sheep I should say the fair and usual average increase and percentage of increase on a band of sheep of that kind properly handled should be about 75 per cent. to 80 per cent. per annum."

Scoville, also a witness on behalf of the defendant, having testified that he resided at Ft. Pierre, had been engaged in the sheep businss 17 years, during which period he had handled all the way from 3,000 to 7,000 head, and that his experience in the handling of sheep had been such as to familiarize him with the percentage of increase of a flock of ewes, was asked this question: "From your knowledge and experience what would be a fair percentage of increase of a flock of ewes of medium grade range sheep per annum?" To this question plaintiff objected on the ground that no proper foundation had been laid, that it was hearsay, and not the best evidence. The objection was overruled. The witness' opinion as to the percentage of increase was practically the same as that given by Newell and Dotson. As the character of the flock and the conditions surrounding it were not clearly defined by the hypothetical question, and it does not appear that this witness ever saw the sheep, it is doubtful whether his testimony on this point was admissible, but its admission is not ground for reversing the judgment because the fact sought to be established by it was proved by other uncontradicted evidence to which the same objections did not exist, and concerning which no errors are assigned in this court. Hermiston v. Green, 11 S. D. 82, 75 N. W. 819; Morris v. Hubbard, 14 S. D. 525, 86 N. W. 25.

In view of the unsatisfactory character of the plaintiff's testimony regarding the increase subsequent to the trial before the referee, his confessed failure to keep any record of the increase and loss, and the evidence of what the increase ordinarily would have been under the circumstances and conitions in which this flock

was kept, we cannot conclude that there was a clear preponderance o f the evidence against the finding of the learned circuit court as to such increase, and under the rule uniformly followed by this court its finding on that issue must be sustained. Jackson v. Prior Hill Mining Co., 19 S. D. 453, 104 N. W. 207.

Finding no reversible error, the judgment and order appealed from are affirmed.