## HULST *et al.* v. BENEVOLENT HALL ASSOCIATION.

1. Appellant, by filing exceptions to the report of the referee, and moving to set aside the same without calling the attention of the court to the fact that the report fails to contain all the exceptions during the trial, waives such defect.

2. On the issue as to the cost of rebuilding a defective wall, evidence as to what bidders were willing to do the work for is inadmissible.

3. The decision of a referee on the issue as to whether there had been a substantial performance of a building contract, based on conflicting evidence, will not be disturbed unless clearly against the preponderance of the evidence.

4. When there has not been a substantial compliance on the part of the contractor with the building contract, nor an acceptance of the building, the contractor cannot recover, in an action on the specific contract, the contract price, less allowances for the defects.

(Opinion filed July 29, 1896.)

Appeal from circuit court, Meade county.     Hon. A. J. Plowman, Judge.

Action to recover balance alleged to be due upon a builder's contract.     Defendants had judgment and plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*James W. Fowler*, for appellants.

The provisions of the law requiring a referee to report the testimony with his report, is mandatory.    Ch. 100, § 8, Laws 1891; Kent v. Ins. Co., 2 S. D. 300; Supervisors v. Ehlers, 45 Wis. 281; Betts v. Letcher, 1 S. D. 190.    See also Yates v. Shepardson, 27 Wis. 238; Gilbank v. Stephenson, 30 Wis. 155; Maicas v. Leony, 113 N. Y. 619; Kroff v. Overholt, 21 Pac. 1063; McHenry v. Moore, 5 Cal. 93; Kappe v. Britzalora, 19 Id. 607; Calderwood v. Keyser, 31 Id. 337; Gibson v. Gibson, 39 N. W. 450.

*Ralph H. Kirk*, for respondent.

Haney, J.    This action is upon a builder's contract.    It was tried by a referee, who found for defendant.    His report was accepted and defendant had judgment for costs.    Plaintiffs appeal.

The report itself shows that it does not contain all the exceptions taken during the trial.    In this it is defective.    Laws 1891, Chap. 100, § 8.    But the defect was waived.    After the report was returned, plaintiffs filed exceptions to it, and moved to set it aside, without calling attention to the omissions.    This should have been done, that the court might have required a corrected and complete return.    Board of Sup'rs v. Ehlers, 45 Wis. 281.    The objection was first suggested in plaintiffs' notice of intention to move for a new trial.    It was properly disregarded because it came too late, and because it did not affect any substantial right.    Comp. Laws, 4941.    The motion for a new trial was made and heard upon a bill of exceptions or statement of the case containing all the evidence before the referee

and all the exceptions taken during the trial. The court re-
fused a new trial upon a record containing all the proceedings
before the referee.   What possible benefit could plaintiffs have
derived from having the history of such proceedings duplicated
in the form of a report?   There was no reversible error in this
regard.

Plaintiffs offered in evidence a bid by certain parties to re-
build the east wall of the building in question.   Defendant ob-
jected to the offer as irrelevant, incompetent and immaterial.
The fact sought to be established was the actual cost of labor
and material required to take down the wall and replace it in
the condition called for by the contract.   The bid may or may
not have represented such cost.   It may or may not have been
prepared by persons who, knew the amount of material and
labor required.   It only tended to show what the bidders were
willing to do the work for.   It was not evidence of actual value.
The amount of material and labor required was easily ascer-
tainable.   The evidence was properly excluded.

The contract was between one A. H. Smith and defendant.
Plaintiffs are his assignees.   It is the rule in this state that
"when contractors have in good faith intended to and have
substantially, complied with the contract, although there may
be slight defects, caused by inadvertence or unintentional
omissions, they may recover the contract price, less the dam-
age sustained on account of such defects."    Aldrich v. Wil-
marth, 3 S. D. 523, 54 N. W. 811.   Whether there has been a
substantial compliance is a question of fact.   Glacius v. Black,
50 N. Y. 145; Phillip v. Gallant, 62 N. Y. 256; Wodworth v.
Fuller, 80 N. Y. 312.   The referee finds "that the building was
not completed according to the plans and specifications and the
terms of the contract, nor was there a substantial compliance
with the terms and conditions of the contract by the con-
tractor."   The evidence is voluminous and conflicting.   This
court will presume the referee weighed the evidence correctly,
and, unless satisfied there is a clear preponderance against his

finding, it must be sustained.   Randall v. Burk Tp., 4 S. D.
339, 57 N. W. 4; Webster v. White, (S. D.) 66 N. W. 1145.   It
was provided in the contract that Smith should erect and finish
in a good, substantial and workmanlike manner, and in con-
formity with the plans, drafts, specifications and explanations
thereof, which were made a part of the contract, a brick build-
ing on lots 13 and 14, in block 13, townsite of Sturgis, on or be-
fore February 1, 1893.   Such building was to be made and fin-
ished out of good and substantial material, to be furnished by
Smith, who was to provide all customary and necessary labor,
and all necessaries of every description, for the due perform-
ance of such work; such work to be done under the direction
and to the satisfaction of one Joel Seward or such other person
as defendant might select for that purpose.   In consideration
of the covenants and agreements of Smith being strictly per-
formed and kept, defendant agreed to pay $12,180 at the times
and in the manner following: $1,000 when the first floor was
laid in rough; $1,500 when second floor was laid in rough;
$3,500 when building was enclosed and under roof; $1,000 when
building was completely plastered; and when completely fin-
ished, according to the contract, the remaining sum of $5,180
—provided, however, that in each of said cases a certificate be
obtained and signed by said Seward, or other person directing
or superintending such work.   Smith was to effect insurance
on the building for all sums paid him prior to its final comple-
tion and acceptance, the policies to be in the name and for the
benefit of defendant, payable, in case of loss, to whom it might
concern.   Defendant was at liberty to retain, out of any moneys
which would otherwise be payable to Smith, the amount of any
liens and the reasonable amount of costs and expenses likely to
occur by reason thereof, unless such liens were lawfully can-
celed or discharged of record.   Smith agreed to cause all liens
to be canceled and discharged without loss, expense, or damage
to defendant, and without any delay in the progress of the
work, and to deliver the property over to defendant free from

all claims and demands whatsoever. It was agreed damages should be allowed for each day's delay in the performance and completion of the contract, after the time fixed therein, arising from any act or default on the part of Smith; such damages to be at the rate of $11.50 per day, being based on the rental value of the building, and the amount of interest paid per day by defendant on the sum required to erect it. The structure was turned over to defendant June 17, 1893. Between September 23, 1892, when work began, and June 17, 1893, defendant paid Smith $10,621.81. Two liens were filed against the property, aggregating $342.65, which have not been canceled of record. There was evidence tending to show that the east wall of the building is untrue, and out of plumb in various places, from three to eight inches; that it would require $800 to replace it in proper form; that it would require $150 to put the roof in good condition, $100 to repair the cornice, and $400, or more, to remedy a large number of other defects; that during the progress of construction Seward frequently called Smith's attention to the defects and imperfect condition of his work, but he made no change therein; that about the time the building was finished, Smith demanded a certificate from Seward who refused it, for the reason the building was not completed according to contract; that officers of defendant went over the building with Smith, pointing out numerous defects and omissions, which were not remedied or supplied. There is nothing in the record indicating bad faith on the part of Seward. His refusal of a final certificate raises a strong inference in favor of the referee's finding. It is conceded it would be necessary to tear down and rebuild the east wall in order to make it conform with the contract. This is not a slight defect which can be easily remedied, nor one caused by inadvertence. It is a substantial deviation from what any ordinarily careful contractor would do, and from what any prudent property owner would expect, or should be required to accept. A statement of all the evidence will not be attempted. It has been carefully consid-

ered. It was incumbent upon plaintiffs to show that Smith had in good faith intended to comply, and had, in fact, substantially complied, with his contract. The question of his good faith and intentions was one to be determined from his conduct, viewed in the light of all the attending circumstances—a question of fact peculiarly within the province of a jury or trial court. The referee, with the witnesses before him, after a thorough investigation of all the facts and circumstances, has found against the plaintiffs upon this material and vital issue. This court cannot disturb his finding. The action is upon a specific contract. Neither substantial compliance nor an acceptance has been shown. Plaintiff cannot recover in any view of the case. It is unnecessary to consider other assignments of error. The judgment of the circuit court is affirmed.