## BREEDEN v. MARTENS.

The notice of contest of an election showing that defendant is entitled to the office, if he was of the age required by the Constitution when elected, which it denied, the answer need only allege that he was of such age.

Exclusion of evidence of a collateral circumstance established by other competent, uncontradicted evidence is harmless.

Where a witness, after stating that a certain person was born in 1881 was asked in what part of the year, her answer, "so far as I remember, just as M. said," is not hearsay, she merely adopting as her own statement of M., who had just testified that the person was born in the early part of the winter of 1881.

Testimony that witness at a certain time, while holding the office of justice of the peace, performed a marriage ceremony for certain persons, is not objectionable on the ground that the record of his election or appointment was the best evidence, neither the legality of the office nor the validity of the marriage being in issue, but the only material matter being whether witness, purporting to act as a justice performed the marriage at the time and place stated by him.

It is not error to allow a witness, who has testified that a certain time and place, acting as a justice, he performed a marriage ceremony for certain persons, to state that he made a record of it in his official docket, without producing the docket, which at the time of his testifying is not in his possession or under his control, his testimony not being to the contents of a written instrument, but only to the fact that he made an entry at the time.

Plaintiff may not have depositions taken for defendant suppressed on the ground that no proper oath was administered, counsel who represented him at the taking of the depositions not having then objected to the manner in which the oath was administered.

Where a person gave two depositions, both read in evidence, the first taken by defendant, and the second by plaintiff, and in the second she placed the date of an event a year later than in the first, and therein fully explained the circumstances which she claimed led to

the discovery of her mistake, conversations between her and a witness, offered by plaintiff on rebuttal, occurring after the taking of the first deposition, in which she gave the same explanation as in her second deposition regarding the discovery of the mistake, are properly excluded, her testimony standing in the same light as if the first deposition had not been given.

Where, when a deposition was taken for plaintiff, deponent produced a bible, purporting to contain a record of the birth of A., and this was offered in evidence when the deposition was taken, but was not returned with the deposition or offered on the trial, and an objection made to its introduction when the deposition was taken was that it appeared to have been altered, testimony of another witness for plaintiff as to what entry he saw in said bible concerning A., and as to the character of it with reference to clearness, is properly excluded as not the best of evidence.

Where plaintiff contests defendant's election on the ground that defendant was not of the required age when he was elected, and that plaintiff, who was elected at the preceeding election, was entitled to hold the office till an eligible person was elected, admission of defendant's testimony that at the election at which he was elected plaintiff was a candidate, if error, is harmless.

Evidence in an election contest in which plaintiff's case depended on his proving that defendant was not 25 years old when he was elected held sufficient to sustain a finding for defendant.

The denial of a new trial for newly discovered evidence, where the showing as to diligence or materiality of the newly discovered evidence is challenged, involves an exercise of discretion, not reviewable except for manifest abuse.

(Opinion filed, July 3, 1907.)

Appeal from Circuit Court, Hughes County. Hon. LYMAN T. BOUCHER, Judge.

Poceedings · by James K. Breeden against Glenn W. Martens. Judgment for defendant. Plaintiff appeals. Affirmed.

*Charles E. De Land* and *John Sutherland,* for appellant. *Gaffy & Stephens,* for respondent.

HANEY, J. This proceeding was commenced in December, 1906, by the service of a notice of contest, wherein the plaintiff alleged in substance that he was elected county judge of Hughes county at the general election of 1904; that he duly qualified and entered upon the discharge of the duties of that office; that the defendant was duly elected to the same office at the general election of 1906, for the term beginning in January, 1907; that a certificate of election was duly issued to the defendant; that the defendant

when elected was not 25 years of age; and that the plaintiff is entitled to retain the office until an eligible person shall have been elected and qualified. The defendant answered, denying that he was under 25 years of age when elected, and alleging that the plaintiff was a defeated candidate for the office in question at the election of 1906. The learned circuit court found that defendant was 25 years of age when elected, and entered judgment dismissing the proceeding on the merits. The plaintiff gave notice of intention to move for a new trial. While such motion was pending he appealed from the judgment, and subsequently appealed from an order denying his application for a new trial.

Plaintiff's objection to the introduction of any testimony under the answer was properly overruled. The notice of contest disclosed that defendant was entitled to the office unless he was under the constitutional age when elected. He was not required to plead facts already alleged by the plaintiff, and which were to be taken as true if not controverted by his answer.

Mr. and Mrs. S. F. Radcliff having testified on behalf of the plaintiff that they knew defendant was born in November, 1882, because they were married February 6, 1882, their first child was born November 13, 1882, they were neighbors of and well acquainted with defendant's parents, and their first child was born a week or ten days before the birth of the defendant, the plaintiff offered in evidence what purported to be a certificate showing that Radcliff's were married on the date stated in their testimony. To this offer the defendant objected, and the objection was sustained. Assuming that the proper foundation was laid, and that the certificate was admissible in corroboration of the Radcliff's testimony, the exclusion of the certificate did not constitute reversible error. It was the date of defendant's birth, not the date of the Radcliff marriage, which was in issue. The latter date was only a collateral circumstance in itself immaterial, which was established by other competent, uncontradicted evidence. An error, if any, in excluding evidence is without prejudice where the fact which it tends to prove is established by other competent evidence. Muller v. Flavin, 13 S. D. 595, 83 N. W. 687; Ochsenreiter v. Elevator Co., 11 S. D. 91, 75 N. W. 822; Distad v. Shanklin, 15 S. D. 509, 90

N. W. 151. The trial was by the court. The certificate was in the possession of the Radcliff's. It corresponded with their testimony. The trial judge will be presumed to have known what it disclosed, the Radcliffs to have known when they were married. No one contradicted their statements with respect to the date of such marriage. The fact they were married on February 6, 1882, with all the inferences flowing therefrom, lost nothing in probative force by the exclusion of the certificate.

Mrs. Charles Brandt, having stated in her deposition taken and read by the defendant that she knew defendant's parents and that defendant was born in 1881, was asked: "What time in the year?" and answered: "So far as I remember, just as Mrs. Moore said." Plaintiff moved to strike out this answer as hearsay, and contends the court erred in overruling his motion. The contention is clearly untenable. Mrs. Moore, in giving her deposition at the same time and place, had stated that the defendant was born in the early part of the winter of 1881. Mrs. Brandt merely referred to Mrs. Moore's statement and made it her own. It was the same as if, her attention having been called to a letter or other writing, she had said the statement therein was true. She was not testifying to what Mrs. Moore had told her, but to a fact within her own knowledge, adopting Mrs. Moore's language in place of using her own.

It is contended the court erred in allowing Albert W. Movius, whose deposition was taken and read by defendant, to testify that while living at Big Stone, Dakota Territory, now South Dakota, he held the office of justice of the peace, and as such performed a marriage ceremony for defendant's parents in the first days of February, 1881, for the reason that the record of his election or appointment to that office was the best evidence. The contention cannot be sustained. Neither the legality of the witness' office nor the validity of the marriage, if one was solemnized, was in issue. The only material matter was whether the witness, purporting to act as a justice of the peace, in fact performed the marriage ceremony at the time and place stated in his testimony. Even if he had not been a justice, either de jure or de facto, the marriage would have been valid, provided the contracting parties acted in

good faith, and, even if the marriage was a nullity, the fact that a ceremony was performed at the time stated was relevant, and there could be no better evidence of that fact than the testimony of the person who performed the ceremony. Nor was it error to allow this witness to state that he made a record of the marriage in his official docket without producing the original. It appeared that when his deposition was taken the witness resided in North Dakota; the docket was not in his possession or under his control; and, moreover, he did not testify to the contents of a written instrument, only to the fact that he made an entry at the time, a statement more beneficial to the plaintiff than to the defendant, as it appears that the docket in question was subsequently in the possession of plaintiff's principal and most friendly witness, who was permitted to testify, without producing the original, that it contained no record of the alleged marriage.

The contention that the depositions of Mrs. Brandt, Frank Thorndyke, and Gus Yonker, taken and read by defendant, should have been suppressed on the ground that no oath was administered to the witnesses, is not tenable. In the first place, it does not appear that the plaintiff, who was represented by counsel at the taking of depositions, made any objection to the manner in which the oath was administered; and, in the second place, the trial court was justified in finding from the evidence touching this matter that the witnesses were in fact sworn by the notary, though the form of the oath was dictated by the defendant, who was personally present, the notary being unfamiliar with court proceedings.

Mrs. Brandt gave two depositions. In the first, taken and read by the defendant, she said the defendant was born early in the winter of 1881. In the second, taken and read by the plaintiff, she said he was born one year later; that she made a mistake in giving her first deposition, and fully explained the circumstances which she claimed had led to the discovery of her mistake. Such being the condition of her testimony, the plaintiff offered to read in rebuttal from the deposition of A. M. Morrill, an attorney employed by him in taking depositions, certain conversations between Morrill and Mrs. Brandt occurring after her first deposition was taken, in which she gave the same explanation regarding the discovery

of her alleged mistake as given in her second deposition. These conversations were properly excluded. Where it is attempted to show that a witness has made statements inconsistent with his testimony, it may be proper to prove other declarations consistent with his testimony, but this is not that case. Here the witness, Mrs. Brandt, in her second deposition, which was read by the plaintiff as a part of his evidence in chief, admitted that she had testified differently in her first deposition. Her testimony would have stood in precisely the same light if her first deposition had not been introduced. The repitition of the statements in her second deposition to plaintiff's attorney or to any number of persons could add nothing to its weight or in any manner affect the consequences of her confessed mistake.

When Mrs. Brandt's second deposition was taken she produced a Bible which purported to contain a record of her daughter's birth. As we understand the bill of exceptions, this record was offered in evidence when her deposition was taken, but was not returned with the deposition or offered on the trial. One of the objections made to its introduction when the deposition was taken was to the effect that the entry appeared to have been altered. S. F. Radcliff, having been called by the plaintiff in rebuttal, stated that he saw this bible at Mrs. Brandt's residence in January, 1907. He was then asked this question: "Did you see any entry in that Bible concerning the name of Anna Brandt? If so, state what entry you saw there." This was objected to as not proper rebuttal, not the best evidence, and as seeking to show an instrument which plaintiff has offered in evidence and failed to produce as an exhibit. The objection was properly sustained. The entry itself was the best evidence and should have been produced, because plaintiff was in position to produce it, and knew that the defendant claimed that it appeared to have been changed. For the same reasons the court did not err in refusing to allow the same witness to express an opinion as to the character of the entry with reference to clearness.

The contention that the court committed reversible error in allowing testimony to the effect that the plaintiff was a candidate for the office in question and defeated at the general election of 1906 is wholly without merit. Assuming the fact of plaintiff's

candidacy to have been immaterial for any purpose, it certainly cannot be presumed that the proof of that fact would or did in-influence the mind of the learned trial judge in determining the only disputed issue in the case—the age of the defendant when he was elected.

It was next contended that the evidence was insufficient to justify the decision. The findings of a trial court on disputed questions of fact are always presumptively right, and though, under our statute, not as controlling upon this court as the verdict of a jury, must stand, unless the evidence clearly preponderates against them. Feldman v. Trumbower, 7 S. D. 408, 64 N. W. 189; Randall v. Burk Tp., 4 S. D. 337, 57 N. W. 4; Reid v. Kellogg, 8 S. D. 596, 67 N. W. 687; Webster v. White, 8 S. D. 479, 66 N. W. 1145; McKenna v. Whittaker, 9 S. D. 442, 69 N. W. 587; Hulst v. Association, 9 S. D. 144, 68 N. W. 200; Grewing v. Machine Co., 12 S. D. 127, 80 N. W. 176; McGray v. Elevator Co., 16 S. D. 109, 91 N. W. 457; Henry v. Taylor, 16 S. D. 424, 93 N. W. 641; Dodson v. Crocker, 16 S. D. 481, 94 N. W. 391; Wood v. Mining & Milling Co., 20 S. D. 161, 105 N. W. 101; Lee v. Dwyer, 20 S. D. 464, 107 N. W. 674.

The state and school census records introduced by the plaintiff were entitled to no consideration whatever, because of the manner in which the information they purported to contain was obtained. Mrs. Brandt's confessed mistake and plaintiff's failure to produce the original entry in her Bible greatly impaired, if it did not totally destroy, the weight of her testimony. Defendant's declarations regarding his age disclosed by Mrs Hutchinson and her daughter, taken in connection with defendant's explanations and all the evidence, merely tended to prove that the family tradition was uncertain on the subject, and that defendant had frequently made conflicting statements regarding the same to persons to whom it was a matter of no consequence.

Coming now to the evidence which merited serious attention: On behalf of the plaintiff Mrs. Eastman testified that she was intimately acquainted and associated with defendant's mother during June and July, 1883, and that defendant was then seven or eight months old. George Spicer testified that he resided in Big Stone

City from 1879 to 1882; that he was acquainted with defendant's parents; that he did not attend their wedding, but understood they were married at Graceville, Minn., in the fall of 1881; and that Mrs. Martens had no child in the fall of 1881. Spicer's wife testified to the same effect. S. B. Radcliff swore that he was intimately acquainted with defendant's parents; that they were married in the fall of 1881, though he was not present at the wedding; that they returned to Big Stone City after being married in October or November, 1881, and were given a wedding supper and dance which he attended; that defendant was born in the fall of 1882; and that he saw defendant when he was not more than three weeks old. Mrs. Radcliff's evidence was in most respects the same as her husband's. The Radcliffs' came from Ortonville, Minn., to Pierre, to attend the trial of this case; they received liberal compensation for loss of time and expenses, and appeared to have been very willing and active supporters of the plaintiff's cause. Plaintiff also introduced records from the office of the district court of Big Stone county, Minn., which will be assumed to have disclosed that defendant's parents were married by a priest of the Roman Catholic Church in that county on Oct. 23, 1881. On the other hand, there was evidence tending to prove a family tradition to the effect that the Martens had participated in two marriage ceremonies, the first before a justice of the peace, the second having been conducted by a priest of the Roman Catholic Church, presumably to satisfy the religious convictions of one or both of the parties; the testimony of the defendant, to the effect that he understood and believed himself to be 26 when elected until after this proceeding was begun, when he was led to believe that he was only 25, and that he had always observed Oct. 24th, as his birthday anniversary; the testimony of Albert Movius, that, as a justice of the peace he married defendant's parents at Big Stone City in the first days of February, 1881; that he resided in the same block they did, and knew that the defendant was born about Thanksgiving Day, 1881. That the importance of this witness' testimony was appreciated by the plaintiff is disclosed by the fact that an attempt was made to prove that his reputation for truth and veracity was bad when he resided in this state, from which he has been absent since 1899. There

was also the testimony of Mrs. George Moore that she lived about
two blocks from the Martens, that she saw defendant when he was
a small child, and that he was born in the early part of the winter
of 1881; the testimony of Gus Yonker that he became acquainted
with defendant's parents in the spring of 1883, when he first saw
defendant and that defendant could then walk; the testimony of
Frank W. Thorndyke that he came to Big Stone City in March,
1880, that he knew defendant's father and saw his mother, that de-
fendant was born in the summer or fall of 1881, and that de-
fendant's parents were married "at the time of the big blizzard
which commenced in 1880 and extended into. 1881." Of course
each witness related incidents and circumstances tending to show
the accuracy of his or her recollection of the principal fact in dis-
pute, which cannot be reproduced in this opinion. Enough has
been stated to disclose that there was an irreconcilable conflict in
the evidence, that equally intelligent and impartial minds might
reach different conclusions as to the date of defendant's birth from
reading the record in this court, and that such record falls far
short of showing a clear preponderance of the evidence against the
decision of the learned trial judge. Plaintiff's contention that de-
fendant's failure to call his father as a witness, his mother having
died in 1883, should be taken as an admission that the father's testi-
mony would have established the plaintiff's case, is met by the argu-
ment that it does not appear why the father was not called; that de-
fendant was not required to prove his age; and that, if it is to be
assumed that Mr. Martens would have sworn that his son was un-
d r 25 when elected county judge, the plaintiff should have called
him or taken his deposition, because on the plaintiff rested the bur-
den of overcoming defendant's prima facie title to the office to
which he was chosen by the electors of Hughes county. What-
ever may be the merits of this argument, it readily will be conceded
that no conclusive admission could be inferred from the absence
of the father's evidence, and that the trial court was in far better
position than is this court to decide what inferences properly arose
from its absence. This also is true of the failure to produce the
justice's docket mentioned by Movius and the original entry in the
Brandt Bible. It was peculiarly within the province of the trial

judge to determine what inferences flowed from the conduct of the parties, the demeanor and appearance of the witnesses who appeared in court, and to determine the credibility of each witness. Presumably he did not err with respect ot any of these matters. So we are compelled to conclude that his findings as to he defendant's age when elected cannot be disturbed.

Finally, it is urged there was error in refusing a new trial on the ground of newly discovered evidence. Applications for new trials on this ground are looked upon with distrust and disfavor. Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Nelson v. Carlson, 54 Minn. 94, 55 N. W. 821. The statute requires such evidence to be material to the party making the application for a new trial, and such as the applicant could not, with reasonable diligence have discovered and produced at the trial. Rev. Code Civ. Proc. § 301. It is the policy of the law to require diligence in securing and presenting evidence when a case is tried. Litigation should not continue indefinitely. Especially is this true of an election contest which the statute requires shall be speedily determined. Demmon v. Mullen, 6 S. D. 554, 62 N. W. 380; Murray v. Whitmore, 9 S. D. 288, 68 N. W. 745. A new trial should be granted on the ground stated only where the newly discovered evidence is "material to the party making the application"—only when it is of such character as will probably change the result of the former trial (Demmon v. Mullen, supra; Wilson v. Seaman, 15 S. D. 103; Heyrock v. McKenzie, supra; Braithwaite v. Aiken, 2 N. D. 57, 49 N. W. 419), and the denial of such an application, where the showing as to diligence or materiality of the newly discovered evidence is challenged, involves an exercise of discretion which cannot be disturbed in the absence of manifest abuse (Daley v. Forsythe, 10 S. D. 464, 74 N. W. 201; Wilson v. Seaman, supra; Heyrock v. McKenzie, supra). It appears from the plaintiff's affidavit that he spent three weeks at Milbank, S. D., and Ortonville, Minn., looking for evidence; that he employed several attorneys to assist him, and that their combined efforts failed to discover the witnesses Alexander Meadows, Zachary T. Russell, and Belle Faber, now residents of Minneapolis, until after the trial. It is asserted that, if the cause should be retried, Russell would testify that he was

acquainted with defendant's parents, that they were married at Graceville, Minn., in October, 1881, that defendant was born in November, 1882, and that he was living in a house adjoining the Martens' home at that time; that Belle Faber would testify she visited with the family of the witness Russell in February, 1883, that the Russells were near neighbors of the Martens, that she saw defendant, and that he was not more than five months old; and that Alexander Meadows would testify that Movius was not a justice of the peace in February, 1881, that he (Meadows) was a near neighbor of the Martens in 1882, that he remembered defendant's birth, and that it was in October or November, 1882. It does not appear that either of these witnesses would be able to show any conclusive or even convincing incident or circumstance in aid of his or her recollection. And there were counter affidavits wherein defendant's father denied the truth of the proposed evidence and numerous well-known citizens of this state declared that the testimony of neither Russell nor Meadows would be entitled to any credence whatever. Manifestly there was no abuse of discretion in denying plaintiff's motion. By continuing the search for persons who once resided in or near Big Stone City at or near the time defendant was born, doubtless the defendant could secure newly discovered evidence of the character here presented after any number of trials. He knew what he was required to prove, and the quantity and quality of his evidence, when the trial began. He should have been sure of his proof before instituting the proceeding. Moreover, there is no probability that this merely cumulative evidence, most of it subject to impeachment, would change the result were a new trial granted. In any event, the learned trial court so decided, and its decision must stand.

The judgment and order appealed from are affirmed.

FULLER, P. J., taking no part in this decision.