**NORTHERN FARM SUPPLY, INC.,** (# 13306) and **Multi-States Builders, Inc.,** (# 13305), **Plaintiffs and Appellees,**

v.

Robert **SPRECHER,** (# 13296 and # 13297), **Defendant and Appellant,**

and

Beadle County A.S.C.S. of Huron, South Dakota; Wilson Redi-Mix of Miller, South Dakota; and the United States Government, by and through the Farmers Home Administration of Huron, South Dakota, Defendants.

Nos. 13296, 13297, 13305 and 13306.

Supreme Court of South Dakota.

Argued May 29, 1981.

Decided July 8, 1981.

Drew C. Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for plaintiffs and appellees.

Thomas M. Tobin of Maynes, Tonner, Maynes & Tobin, Aberdeen, for defendants and appellant.

DUNN, Justice.

Multi-State Builders, Inc. (MSB) and Northern Farm Supply (NFS) brought action against Robert Sprecher (Sprecher), seeking to recover the balance due on a construction contract for a hog confinement building. The circuit court entered separate judgments in favor of MSB and NFS. We affirm in part, reverse in part, and remand.

In July of 1979, Sprecher entered into a contract whereby MSB and NFS agreed to construct a hog confinement building. A hog confinement building is a structure designed to house hogs and to provide automatically for the feed and waste disposal of the hogs. During negotiations with MSB and NFS, Sprecher was informed of various systems used for waste disposal. He decided to purchase a hog confinement building 30' wide and 160' long with an open gutter fresh water flush waste removal system. Sprecher's system was designed with an open gutter four feet five inches wide running the length of the building. Two 300-gallon tanks of water on each end of the building were to flush every four hours to wash away the waste. The waste and water were then routed to a large storage lagoon.

Construction began on the building in September 1979, with the front half of the building being completed during the first week of December 1979. After Sprecher moved 290 hogs into the completed portion of the building, he had problems with the waste disposal system. The gutter had been installed improperly because instead of sloping toward the outside wall where the heaviest concentration of wastes accumulated, the gutter sloped the opposite way. Sprecher immediately notified MSB and NFS that the waste disposal system was not operating satisfactorily.

MSB and NFS employees came to Sprecher's farm three times to correct the problem. On the first visit, the frequency

of the flushing and the diameter of the downspouts were both increased. When this correction proved unsuccessful, the employees tried to repair the leaky valves in the tanks to ensure that the tanks would be full when flushed. This also was unsuccessful. Angle irons were placed in the middle of the gutter to hold the water on the low side of the slope nearest the outside wall. The waste system still did not function properly.

Sprecher decided to seek outside advice from Gemi Enterprises of Sioux City, Iowa. One of their employees, Tim Frankl, examined the problems associated with the waste disposal system including the improperly sloped gutter, the frequency of flushing and the angle iron. He advised Sprecher to convert to an aerated continuous flow open gutter system. After three weeks of shoveling manure in the middle of winter and jeopardizing the health of his hog herd, Sprecher decided to follow Tim Frankl's advice.

MSB and NFS demanded additional payment on the contract before they would make further corrections on Sprecher's building. Sprecher refused to make further payments until the building was functioning properly. MSB and NFS later agreed to supply parts and labor for the installation of the continuous flow systems, as suggested by Gemi Enterprises. This new system remedied Sprecher's waste problems.

Along with the waste disposal problems, Sprecher claims that: there were problems with the feeding system, only one floor drain in the alleyway was installed rather than five as the contract specified, the concrete work was shoddy and filled with cracks around the pen posts, the pot washer was not supplied, the electrical system was improperly installed, the angle iron in the gutter injured the hogs, the grate over the gutter opening was defective and the fair market value of the building was $44,000 less than the contract price.

In February of 1980, MSB and NFS filed a mechanic's lien to collect the amount still owed on the construction contract. In the action to foreclose on that lien, the circuit court entered separate judgments and find-ings of fact and conclusions of law in favor of MSB and NFS. Sprecher appeals.

Sprecher contends that MSB and NFS did not substantially complete their contracts. The rule of substantial performance as applied by this court to building contracts is summarized in *Aldrich v. Wilmarth*, 3 S.D. 523, 54 N.W. 811 (1893), as follows: "[W]here the builders have in good faith intended to and have substantially complied with their contract, although there may be slight defects caused by inadvertence or unintentional omissions, they may recover the contract price, less the damages sustained on account of such defects." *Id.* at 529, 54 N.W. at 813.

The *Aldrich* rule does not set forth an absolute criteria to be examined by courts in determining whether performance is substantial. However, this court has examined such factors as whether the defect can be easily remedied and was not caused by inadvertence, *Hulst v. Benevolent Hall Ass'n.*, 9 S.D. 144, 68 N.W. 200 (1896); whether the deviation from the contract defeated the purpose of the contract in any substantial manner, *Van Den Hoek v. Bradwisch*, 273 N.W.2d 152 (S.D.1978); and the extent of nonperformance in relation to the full performance promised, *Dixon v. Nelson*, 79 S.D. 44, 107 N.W.2d 505 (1961).

The question of whether there has been substantial performance in a given situation is a question of fact to be determined by the trial court. *Hulst v. Benevolent Hall Ass'n.*, supra; *Van Den Hoek v. Bradwisch*, supra. We cannot substitute our judgment on factual questions for that of the trial court unless the finding of fact is clearly erroneous. *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970); SDCL 15–6–52(a). The record indicates that the circuit court considered the substantial performance criteria and the evidence supports its finding. We affirm this finding.

Sprecher contends that the circuit court should have adopted the diminution of fair market value measure of damages rather than basing recovery on the cost of repairs. The choice between the two measures de-

pends on the circumstances. Many courts determine the appropriate measure of recovery as follows:

If the contract is substantially performed, and the breach of contract can be remedied without taking down and reconstructing a substantial portion of the building, the amount of damages is the cost of making the work conform to the contract. Or, where the defects cannot be remedied without reconstruction of a substantial portion of the work, the measure of damage is the difference in value between what it would have been if built according to contract and what was actually built.

*Dobler v. Malloy,* 214 N.W.2d 510, 518 (N.D. 1973). *See also H. P. Droher and Sons v. Toushin,* 250 Minn. 490, 85 N.W.2d 273 (1957).

In the case before us, there was substantial performance of the contract and the facts indicate that the waste removal system was made to function effectively through the conversion to the aerated waste disposal system, without reconstructing a substantial portion of the building. The circuit court applied the proper measure of damages.

Sprecher contends that the circuit court erred in failing to award to him $6,939.89 for the cost of an aerated waste disposal system, $1,209.31 for the cost of installation, and $12,791.67 as the cost of operation for the lifetime of the building discounted at eight percent. The circuit court found that Sprecher, on his own volition, installed the aerated waste disposal system. It also found that the original system as installed by MSB and NFS could have functioned properly if Sprecher had allowed MSB and NFS additional opportunities to remedy the problems with the system.

The record indicates, however, that Sprecher allowed MSB and NFS almost three weeks to cure the defects of the fresh water flush waste removal system before contacting Gemi Enterprises. During this time, Sprecher was shoveling manure manually and the health of his hog herd was in jeopardy. After examining Sprecher's problems, Gemi Enterprises informed Sprecher that the installation of an aerated waste disposal system would be the least expensive way to correct his problems. Because Sprecher's damages are limited to the cost of repair, he should be recompensed to the extent that it takes to complete MSB's and NFS's contractual obligations. To complete the contract, Sprecher should receive a functioning waste disposal system. The record indicates that the least expensive way to repair the waste removal system was by installing an aerated waste disposal system. The findings of the circuit court on this issue are not supported by the record and are clearly erroneous. *In re Estate of Hobelsberger,* supra; SDCL 15–6–52(a). Therefore, we reverse that portion of the judgment which disallows the $6,939.89 cost of an aerated system and the $1,209.31 cost of installation.

The installation of the aerated system gave Sprecher the benefit of a system superior to any on the active market at the time the contract was signed. It is a system which works, and from all the evidence adduced, it would appear that the straight flush system which Sprecher chose because of his access to water, never would have operated in a satisfactory manner. While MSB and NFS may have erred in permitting the straight flush system in the first instance, we cannot conclude that they should be liable for the increased cost of a system which works, and where an aerator system of some kind should have been installed under the original contract. Therefore, we affirm the circuit court's disallowance of $12,791.67 for operating expenses because the measure of damages for breach of contract is limited to those damages which may reasonably have been in the contemplation of both parties at the time they entered into the contract. *Thermoid Rubber Co. v. Brictson,* 39 S.D. 114, 163 N.W. 567 (1917); SDCL 21–2–1.

Sprecher also contends that MSB breached implied and expressed warranties of merchantability and fitness for a particular purpose. The circuit court found that the contract was a building contract rather than a contract for the sale of goods and,

therefore, application of the Sales Article of the Uniform Commercial Code, SDCL Title 57A, was not appropriate. We affirm.

Sprecher entered into a contract which provided that MSB would construct a hog confinement building in exchange for consideration. It was MSB's duty under the contract to build a hog confinement structure that would provide automatically for the waste disposal of hogs. The agreement did not provide for the sale of "raw materials" such as cement, siding or roofing materials.

The sale of goods is defined in SDCL 57A–2–106(1) as "the passing of title from the seller to the buyer for a price[.]" The contract before us is not a contract of sale. It is a construction contract. The transfer of title in the drains, waste disposal system, tanks and power washer was incidental to the main purpose of the contract which was for the furnishing of labor and the assembly of material in the erection and construction of a hog confinement facility.

Other jurisdictions have reached a similar conclusion holding that construction contracts do not constitute a transaction, a contract for sale, or a sale within the scope of U.C.C. Article 2, and that Article 2 was inapplicable. See Epstein v. Giannattasio, 25 Conn.Supp. 109, 197 A.2d 342 (1963); J & R Electric Div. of J. O. Mory Stores, Inc. v. Skoog Constr. Co., 38 Ill.App.3d 747, 348 N.E.2d 474 (1976); and DeMatteo v. White, 233 Pa.Super. 339, 336 A.2d 355 (1975). We affirm the circuit court holding that this was not a contract for the sale of goods.

■ The circuit court found that Sprecher agreed to pay the sum of $48,282 to MSB for the construction of a hog confinement building and $28,851.94 to NFS for the sale and delivery of certain hog equipment. These contracts were in writing and signed by Sprecher. Therefore, the circuit court did not err in entering judgments based on these figures. Sprecher has no basis to complain as to how his $25,000 downpayment was applied to the contract.

Sprecher also contends that the sum of $6,196.95 due Wilson Redi-Mix was awarded twice under the judgment. Conclusion of Law VI, however, indicates that the sum

of $6,196.95 owed to Wilson Redi-Mix should be deducted from the balance due MSB. We affirm.

The other issues raised by Sprecher are found to be without merit.

■ Through notices of review MSB and NFS contend that the $6500 awarded to Sprecher for their failure to place five drains in the alleyway of the building according to specifications was not a compensable loss. As the circuit court indicated, MSB and NFS were remiss in not installing the five drains and particularly for not obtaining the agreement of Sprecher prior to deviating from the plans. However, we are inclined to agree with MSB and NFS that the deviation did not detract materially from the utility of the building considering the slant of the alleyway from both ends to the middle of the structure. Further, there is no hard evidence to substantiate the amount of damages awarded. Damages awarded for an hour a day for the life of the building are conjectural considering the limited utility of drains on the high side of a slanted alleyway, when it is apparent the hog confinement building will not be in operation for periods of time during the year, plus the additional fact that the alleyways will need to be cleaned only on those occasions when hogs are moved through the alleyway. As this court held in Kunkel v. United Security Ins. Co. of New Jersey, 84 S.D. 116, 168 N.W.2d 723 (1969), in actions for breach of contract, damages which are uncertain, contingent or speculative cannot be recovered. Therefore, the circuit court award of $6500 damages is reversed.

■ The evidence does substantiate that Sprecher was entitled to an offset for the cost of the four missing drains under the contract at $20 each, plus the cost of installation and any required plumbing. There is no evidence in the record as to the actual cost of installing the missing drains and any plumbing required. This item of damage must be remanded to the circuit court for a finding as to the cost of installing the additional drains.

There is some dispute as to whether the system will work satisfactorily as long as the cement gutter is slanted in the wrong direction and with the controversial angle iron installed. The evidence indicates that MSB and NFS once offered to replace this cement work. We cannot find the circuit court in error in awarding a set-off to replace the gutter.

Sprecher should be allowed a set-off of $750 for the power washer which was not delivered. He should also be allowed a set-off for the flush tanks upon the return of these items to MSB and NFS.

The other issues raised by MSB and NFS are without merit.

We reverse the circuit court judgments regarding the installation of the aerated waste disposal system and the award of extra labor for not installing four alley drains, remand to the circuit court for a finding as to the cost of installing the additional drains, and affirm the remainder of the judgments.

All the Justices concur.