1996 SD 44

**LAND AND MARINE DEVELOPMENTS, INC., a South Dakota corporation, of Fort Pierre, South Dakota, Plaintiff and Appellee,**

v.

**Brett WIDVEY, Defendant and Appellant.**

No. 19061.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1995.

Decided April 24, 1996.

Charles Schroyer of Schmidt, Schroyer, Colwill and Moreno, Pierre, for plaintiff and appellee.

James E. Carlon, Pierre, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Brett Widvey (Widvey) appeals a summary judgment for Land and Marine Developments, Inc. (Land and Marine) in Land and Marine's breach of contract action against Widvey. We affirm on issues one and three and reverse and remand on issue two as we determine there exists a question of material fact.

FACTS

[¶ 2] Land and Marine owns Marion's Garden, a residential real estate development in Fort Pierre, South Dakota. The development is adjacent to the Missouri River and a

canal connects interior lots in the development with the river. On April 15, 1993, Widvey entered into an offer and agreement to purchase lot 57 of the development. The total sale price was $31,500. Of that amount, Widvey paid Land and Marine $1,000 in earnest money at the time of execution of the purchase agreement. Of the remaining $30,500, Widvey was to pay $25,000 on or before April 30, 1993. The remaining balance of $5,500 was made payable according to the following provision of the purchase agreement:

> The remaining balance of $5,500.00 shall be due and payable upon Seller [i.e., Land and Marine] providing utilities to the lot line and sheet piling along canal boundary of said property, and providing a roughed road to the property.

[¶ 3] By April 25, 1994, a roughed-in road to Widvey's property was in existence, sheet pilings had been installed along the canal boundary of Widvey's lot, and electricity had been run to the development, but, not to Widvey's lot line. In late April, Land and Marine demanded payment of the $5,500 balance due on Widvey's lot. Widvey responded with a letter on May 14 itemizing several areas where he believed Land and Marine had failed to perform in accordance with the purchase agreement. In his letter, Widvey acknowledged a representative from Land and Marine had agreed to pay the $750 cost of running electrical service cable to Widvey's lot line from the power transformer. Nevertheless, due to the other deficiencies Widvey perceived in Land and Marine's performance, Widvey refused to satisfy his remaining obligation on the purchase agreement until those deficiencies were corrected.

[¶ 4] On August 18, 1994, Land and Marine served Widvey with a summons and complaint for the remaining $5,500 due on his purchase of the lot plus interest, costs and disbursements. Widvey answered, pleading nonperformance of the purchase agreement by Land and Marine and counterclaiming for breach of contract and fraud. Land and Marine moved for summary judgment on October 7, 1994. A hearing was held on November 7 and, on December 16, the trial court entered summary judgment for Land and Marine as follows:

> ORDERED, ADJUDGED AND DECREED that [Land and Marine] shall have Judgment against the Defendant Brett Widvey in the amount of $5,500.00 together with interest thereon at the rate of 12% per annum from and after May 12, 1994 to the date of this Judgment and for [Land and Marine's] costs and disbursements herein in the amount of $48.50 subject to a credit in favor of [Widvey] in the amount of $750.00 representing the costs to [Widvey] of running electrical service cable from the power transformer to the lot line of [Widvey's] former property.

Widvey appeals.

## ISSUE

[¶ 5] **Did the trial court err in granting Land and Marine summary judgment?**

Summary judgment is authorized only when the movant is entitled to judgment as a matter of law because there are no genuine issues of material fact. The burden is on the moving party to clearly show that there is no genuine issue of material fact, and the evidence must be viewed most favorably to the nonmoving party; thus, reasonable doubts should be resolved against the moving party. The remedy is extreme and it is not intended as a substitute for a trial. When no genuine issue of material facts exists in a case, the legal questions may be properly decided by summary judgment. Therefore, we affirm only if there are no genuine issues of material fact and the legal questions have been correctly decided.

*Bego v. Gordon,* 407 N.W.2d 801, 803–804 (S.D.1987) (citations omitted).

[¶ 6] Widvey contends the trial court erred in granting Land and Marine summary judgment because Land and Marine breached the provisions of the purchase agreement in several ways. In that regard, Widvey first asserts the purchase agreement obligated Land and Marine to provide sheet piling along the entire canal boundary in the development while Land and Marine asserts it fulfilled its obligation by providing sheet piling along the canal boundary of Widvey's property alone.

[¶ 7] The pertinent contract language provides: "The remaining balance of $5,500.00 shall be due and payable upon [Land and Marine] providing ... sheet piling along canal boundary *of said property[.]* " (emphasis added).

> When construing a contract, the court must ascertain and give effect to the intention of the parties. That intention is found in the contract language. Unless the language is ambiguous or a different intention is manifested, the language in a contract is to be given its plain and ordinary meaning. Whether contract language is ambiguous is a question of law. Language is ambiguous when a genuine uncertainty exists as to which of two or more meanings is correct.

*American State Bank v. Adkins,* 458 N.W.2d 807, 809 (S.D.1990) (citations omitted).

[¶ 8] Contrary to Widvey's assertions, the contract language concerning Land and Marine's obligation to provide sheet piling is clear, certain and unambiguous. The language provides that Land and Marine must provide the sheet piling along the canal boundary, "of *said* property[.]" (emphasis added). The *only* property previously mentioned in the contract is: *"Lot 57* of Marion's Garden Subdivision of Compton Newman River Subdivision Located in Section 28, Township 5 North, Range 31 East, B.H.M., Stanley County, South Dakota." (emphasis added). Thus, under the plain terms of the contract, so long as Land and Marine provided sheet piling along the canal boundary of *lot 57* (i.e., Widvey's lot), Land and Marine fulfilled its obligation. Since there is no dispute that Land and Marine provided that sheet piling, the trial court appropriately determined there was no breach of contract by Land and Marine as to installation of the sheet piling.

[¶ 9] Widvey also asserts Land and Marine breached its obligation to provide a roughed road to his property. Widvey contends Land and Marine did not provide the road because the entrance to the development is owned by a third party who has not given anyone permission to use his property to access the development.

[¶ 10] The pertinent contract language provides, "[t]he remaining balance of $5,500.00 shall be due and payable upon *Seller* [i.e., Land and Marine] *providing* ... a roughed road to the property." (emphasis added). The plain and ordinary meaning of the word "provide" is, "to make available; supply ... to furnish with[.]" Webster's New World Dictionary 481 (RevPockEd 1975). Thus, the contract required Land and Marine to make a road available for Widvey's use or to supply or furnish Widvey with a road to his property.

[¶ 11] Land and Marine's complaint alleged that all improvements required by the purchase agreement, including the road, were completed on or before April 25, 1994. Widvey's answer and counterclaim denied that and specifically alleged Land and Marine failed to provide the road. An affidavit in support of Land and Marine's motion for summary judgment alleged the road improvements installed by Land and Marine prior to its demand for payment met or exceeded any reasonable person's interpretation of a roughed in road. Widvey's counter-affidavit alleged he and other occupants of the development were driving across property owned by Rick Anderson, a third party not involved in this suit, in order to enter into the development. The counter-affidavit also alleged Land and Marine failed to acquire Anderson's property or to secure an easement across his property to insure Widvey's continuing right of access to the property. Rick Anderson's affidavit confirmed that the developers and residents of the development were driving across a portion of his property in order to enter the development. While Anderson's affidavit acknowledged that, at one time, he had reached an oral agreement with Land and Marine over access to the development, the agreement was not consummated. Anderson indicated that, although he would still sell the property to Land and Marine, no terms had been agreed upon at the time of his completion of the affidavit.*

---

* Widvey's dissatisfaction with the road goes beyond its legal status. He notes in his brief,

"[a]lthough the road is certainly rough, it is [sic] not been provided by Land and Marine." How-

[¶ 12] The above exchange raises a genuine issue of material fact over Land and Marine's compliance with the requirement of the contract that it *provide* a road to Widvey's property. Obviously, Land and Marine could not provide, make available, supply or furnish what it did not own or did not have some arrangement to use (*e.g.,* an easement). Accordingly, we remand to the trial court for resolution of the issue of Land and Marine's compliance with the term of the purchase agreement concerning the road to Widvey's property.

[¶ 13] Finally, Widvey contends that Land and Marine breached the purchase agreement by failing to provide utilities to his lot line. According to the trial court, the reason for the failure of Land and Marine to literally comply with its contractual obligation on the electrical service is that the City of Fort Pierre changed its utility policy and only brought electricity to the subdivision rather than Widvey's property as was expected at the time the purchase agreement was signed. Whatever the reason, the record reflects that, by May 12, 1994, a representative of Land and marine had agreed to pay the $750 cost of running electrical service cable to Widvey's lot line from the power transformer. While this was not literal performance of the terms of the purchase agreement, it was certainly substantial or equivalent performance. *See Northern Farm Supply Inc. v. Sprecher,* 307 N.W.2d 870, 872 (S.D.1981) (substantial performance occurs where deviation from contract does not defeat purpose of contract in any substantial manner). Thus, the trial court appropriately gave Widvey a $750 credit against Land and Marine's judgment for the cost of running the electrical line. *See id.* (where party substantially complies with contract, although there are slight defects, party may recover contract price less damages sustained on account of defects).

[¶ 14] Affirmed as to issues one and three and reversed and remanded as to issue two.

ever his legal complaint to this Court is limited to the legal ownership of, and right to use, the

[¶ 15] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 16] SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 17] It was obviously a mistake to attempt to resolve these construction contract disputes by summary judgment. It seems to me that the developer is attempting impermissible short cuts, first with construction and now with the law.

[¶ 18] First, the developer wants to provide cash instead of providing utilities to the lot line. Secondly, the developer claims it has performed its obligation of providing "a roughed road to the property" even though it does not even own or have legal rights to the road. Thirdly, to provide sheet piling to the lot but not to the lots on each side of the property may do no good at all at keeping the water in the canal from eroding the property. Why not require proof of workmanlike construction *now* through a trial? To grant summary judgment when genuine issues of material fact exist as to the adequacy of the construction seems premature, inefficient and will probably result in a multiplicity of lawsuits. I would reverse and remand for a trial, at least on the issues relating to the road and the piling.